**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**478.34 ACRES OF LAND, TRACT NO. 400, by Paul A. and Betty Cook, Defendants-Appellants.**

No. 76–1706.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 18, 1977.

Decided June 1, 1978.

William A. Johnson, Sullivan & Johnson, Taylorsville, Ky., Rose Levada Shipp, Louisville, Ky., for defendants-appellants.

Albert Jones, U. S. Atty., Louisville, Ky., Peter R. Taft, George R. Hyde, Michael A. McCord, Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before PHILLIPS, Chief Judge, EDWARDS and MERRITT, Circuit Judges.

MERRITT, Circuit Judge.

Paul and Betty Cook, a farmer and his wife, received a jury award of $101,264 for the taking of their 164 acre farm located in a rural community approximately 30 miles southwest of Louisville. On appeal, they claim the District Court committed two errors on questions of evidence, errors which they say resulted in an inadequate verdict: (1) the District Judge erroneously concluded that there was no likelihood that the Cook's farm could be developed for residential purposes in the near future and, therefore, excluded the testimony of their real estate expert that the farm's value should reflect its potential for residential development; and (2) the District Judge erroneously admitted a government witness's testimony purporting to show the average value of all farm land sold in the county for the previous eighteen months. We reverse and remand for a new trial.

## I. STATEMENT OF THE CASE

The Cooks bought this 164 acre tract in December 1969, for $51,000. On the farm they had an eight room house, two barns, a lake and a spring, and they raised tobacco, grain, hay and beef cows. The farm had 2,500 feet of frontage along a rural blacktop road and ran back from the road between parallel lines to the Salt River. In addition to electricity, telephone, mail delivery and school bus service, there is a water line approximately 1½ miles away. Taylorsville is 3½ miles away; it has a population of 867 according to a 1970 census and is the county seat of Spencer County, population 5,488. Louisville is about an hour's drive northwest; and Frankfort, the state capital, is about the same distance northeast. On May 30, 1974, 4½ years after the Cooks bought the farm, the government condemned it for the Taylorsville Reservoir, a Corps of Engineers lake project.

### A. The Government's Proof

At the trial, two government appraisers stated their opinion that the most profitable potential use of the land was its existing use as a farm and, based on sales considered comparable, testified respectively that its value was $88,000 and $90,000.

Over the landowner's objection, the Court allowed a Corps of Engineers employee to testify that he had conducted a "statistical survey of all of the real estate transfers in Spencer County . . . of 30 acres or more . . . [for] a period of time from January, 1973, to June, 1975." The witness obtained "the true selling prices" from information found in recorded deeds located

in the county courthouse, and he introduced into evidence a chart showing 97 transfers during the survey period. He testified that the survey showed that the average land value in the northern part of the county was $549 an acre, and he said the statistical survey showed an average of $375 an acre in the southern part of the county where the Cook's farm was located. He did not introduce or have available the deeds from which he obtained his information, nor had he otherwise verified the transactions. The survey was offered as evidence of average farm land values in the county, not as the basis for an expert opinion, and government counsel argued to the jury that it should consider these prices in valuing the Cook farm. The government now argues in its brief that "the evidence was relevant to refute Cook's contention that there was great demand for development sites in the southern section of the county."

## B. The Landowners' Proof

Mr. Cook testified that "the best use of the farm would be to sell it off in five or ten acre tracts" for home sites "because there's a lot of people looking for that size tract . . . and for that use, the farm is worth $225,000." He based his opinion on the fact that he had recently sold a residential lot off of his other farm in the same community for $4,000 and on the additional fact that two other farmers in the neighborhood had each sold several lots off their farms for $4,000 an acre. The Court instructed the jury to disregard Mr. Cook's opinion based on residential development because there was no showing of a "substantial demand" in the community for such small acreage tracts.

The Spencer County Planning Coordinator testified as a witness for the landowner. He acknowledged that the county had steadily lost population since 1920 but stated that his research indicated "changes were occurring" in this "traditional oriented community of small farmers." The "two most significant" changes, according to the planner, "were the return of . . . people's sons and daughters who had mi-grated to the city for jobs, coming back home to live in the country to participate in the local way of life while continuing to drive to the city for employment and . . . the residential build-up from urban people coming into the community, getting away from the city, coming out in the rural countryside to enjoy life in the small community." He said that as a result of this "pattern," and as a result of the expansion of metropolitan Louisville, Spencer County had just "begun to feel the pressures" of population growth.

Following the testimony of the county planner, the landowner offered to prove through an experienced local real estate broker the farm's potential for development into small acreage residential tracts. The District Judge conducted a preliminary inquiry out of the jury's presence in order to determine whether a foundation existed for such evaluation testimony.

The real estate expert agreed with the county's planner that population trends in the area were changing and contended that there was a large demand for such small acreage tracts; during the past several years, he had received many telephone calls from potential purchasers for such tracts; and for several years he had been in the process of developing three farms into small acreage tracts, including his own farm. He testified that he knew of several other farms which were being similarly subdivided into small acreage tracts. The sales prices for such tracts ranged from less than $1,000 an acre to $4,000 an acre. Based on these sales, his estimate of the demand, and his opinion that the Cook farm could be successfully subdivided, he appraised the Cook's farm at $197,000.

The District Judge ruled the witness' testimony inadmissible on the ground that there was no reasonable likelihood that the entire farm could be subdivided into small acreage tracts because there was no "substantial demand" for such tracts. The Court then advised the real estate broker that he would be permitted to testify to the jury that the highest and best use of the farm was for a strip residential develop-

ment along the road, with the remainder of the land to be valued as farm land.

Following the Court's advice, the witness so testified to the jury; but at the conclusion of his testimony the Court concluded that there was no "substantial demand" in the area for such a strip development consisting of small residential lots. The Court changed its ruling and instructed the jury that it should disregard any evaluation testimony not based exclusively on agricultural uses. In its formal charge, the Court reminded the jury of its previous instructions to this effect, saying, "the Court has determined and so instructed you that the highest and best use of Mr. Cook's property as of this date of taking was for general agricultural use."

## II. THE EVIDENTIARY QUESTIONS

### A. The Statistical Survey

■ The government's statistical survey was inadmissible. It was offered and admitted to prove the true prices paid for land in the county, not as the basis for an expert opinion under Rule 703 of the Federal Rules of Evidence. The deeds were not introduced into evidence, nor was any other effort made to verify or authenticate the data in accordance with Rule 901. The evidence therefore did not come within the exception to the hearsay rule admitting deeds and public records, Rule 803(8), (14), (15), or any other exception to the hearsay rule. There was no way for the landowner to test the accuracy or reliability of the data. Moreover, the survey data was not relevant to prove the agricultural value of the Cook's farm because no effort was made to show that the unidentified properties covered by the survey were comparable.

■ The government argues that even if the survey was not admissible to show the actual value of comparable farms in the county it was admissible at least to refute the landowner's contention that there was a demand for home sites in the southern part of the county. The District Court ruled, however, that all of the landowner's evidence showing the potential of his land for home site development was inadmissible. If the landowner's evidence on this subject was irrelevant, it would appear that the government's evidence offered to refute this contention was also irrelevant.

### B. The Landowners' Expert Testimony

■ We would not be inclined to remand for a new trial on this ground alone, however, had the lower court admitted the landowner's evidence of value based on the development of home sites along the road at the front of the Cook's farm. The district judge properly excluded evidence that the whole farm or a substantial portion of it could be subdivided in the near future. The landowner offered no credible evidence of any current demand or potential for subdivisions in the neighborhood of the Cook's farm, and there was no credible evidence concerning the costs of subdividing the property or evidence that the Cooks had a plan to subdivide it. But the landowner did show that there was a growing demand for strip development along rural roads in the county. The Cooks had sold off one lot for this purpose themselves on another farm they owned nearby, and a number of farmers in the community were selling off lots for this purpose.

There was sufficient evidence to support a finding by the jury that the "property is adaptable and needed or likely to be needed in the reasonably near future" for home site development along the road. The quoted language is part of the test of admissibility applied in *Olson v. United States*, 292 U.S. 246, 255–56, 54 S.Ct. 704, 708–709, 78 L.Ed. 1236 (1934), *United States v. 1,291.83 Acres of Land*, 411 F.2d 1081, 1086 (6th Cir., 1969), and in analogous cases. Admissibility does not hinge on a finding of "substantial current demand," the test which the District Court seems to have applied.

### C. Preliminary Findings Under Federal Evidence Rule 104(b)

■ The trial judge must make a preliminary determination that there is factual support for a finding by the jury that the "property is adaptable and needed or likely

to be needed in the reasonably near future" for the proposed use. Having found that there is evidence sufficient to support such a finding by the jury, the Court should then leave the question of adaptability and potential development to the jury. He need not be convinced that the landowner has established the development potential of the property for the proposed use by a preponderance of the evidence but only that the evidence is such that a jury could reasonably so find.

This method of handling such jury issues in condemnation cases follows Federal Evidence Rule 104(b) which provides, "When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition."

The draftsmen of the Federal Rules of Evidence stated the reason for this rule as follows:

> If preliminary questions of conditional relevancy were determined solely by the judge, . . . the functioning of the jury as a trier of fact would be greatly restricted and in some cases virtually destroyed. These are appropriate questions for juries . . . . The judge makes a preliminary determination whether the foundation evidence is sufficient to support a finding of fulfillment of the condition. If so, the item is admitted. If after all the evidence on the issue is in, pro and con, the jury could reasonably conclude that fulfillment of the condition is not established, the issue is for them. If the evidence is not such as to allow a finding, the judge withdraws the matter from their consideration.

### III. CONCLUSION

Although the record is not altogether clear, it appears that the Court below may not have followed this procedure in handling the landowner's expert testimony, and the Court apparently applied the erroneous test of "substantial current demand." Moreover, although we cannot say that the jury's award was inadequate in this case,

neither can we say with certainty that the admission of the government's statistical survey and the exclusion of the landowner's expert testimony on the potential of the property for strip residential development were harmless errors. For these reasons, we reverse and remand for a new trial.