**UNITED STATES of America, Appellant,**

v.

**47.3096 ACRES, ETC., IN OXFORD TOWNSHIP, ERIE COUNTY, STATE OF OHIO, and Kenneth DeChant, et al., Appellees.**

**No. 76–2644.**

United States Court of Appeals, Sixth Circuit.

Argued June 16, 1978.

Decided Aug. 28, 1978.

James R. Williams, U. S. Atty., Toledo, Ohio, Peter R. Taft, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., Carl Strass, Charles E. Biblowit, Donald E. Strouse, Washington, D. C., for appellant.

Dennis E. Murray, Patrick Murray, Sandusky, Ohio, for DeChant et al.

John E. Moyer, Pros. Atty. of Erie County, Sandusky, Ohio, for Grathwol.

Before WEICK, EDWARDS and CELEBREZZE, Circuit Judges.

PER CURIAM.

The United States appeals from a judgment entered upon a jury verdict awarding the defendants $77,000 for the taking of 47.3096 acres from a 76.7588 acre tract of farmland in Oxford Township, Erie County, Ohio. The sole question on appeal is whether the trial court properly allowed the jury to consider testimony of a defense appraisal witness, who estimated the value of the property on the basis of its hypothetical worth as a residential subdivision.

The defense appraiser hypothesized that, at the time of condemnation, the seventy-six acre tract could have been divided up into a residential subdivision of fifteen five-acre lots and four lots of 100 feet by 200 feet. Using comparable sales in the area, he estimated that the five-acre lots would have sold for $15,000 each and the smaller lots for $5,000 each, for a total of $245,000. The trial court denied a Government motion to strike this testimony and also denied a later Government request to instruct the jury that it was improper to arrive at market value via a "lot method" of appraisal—*i. e.,* by estimating the number of lots and multiplying the amount by a fixed lot price. The Government renewed these contentions in a motion for a new trial, which was also denied.

There is some authority for the proposition that valuation evidence based

on the lot method of appraisal should never be admitted in condemnation cases involving unimproved raw land. *See* 4 Nichols, Law of Eminent Domain § 12.3142(1)(a) (3d Ed. 1976). The Government would apparently have us adopt such an exclusionary rule in this case. We think the better view, however, is that a lot method appraisal can be admitted in appropriate cases if the proponent offers credible evidence of the costs of subdivision—*e. g.,* the expense of clearing and improving the land, surveying and dividing it into lots, advertising and selling, holding it, and paying taxes and interest until all lots are sold. *See United States v. 100 Acres,* 468 F.2d 1261, 1266 (9th Cir. 1972). *Cf. United States v. 478.34 Acres,* 578 F.2d 156, 159 (6th Cir. 1978). Juries in condemnation cases should be permitted to consider any factors "that might fairly be brought forward and given substantial weight in bargaining between an owner willing to sell and a purchaser desiring to buy." *United States v. 1,291.83 Acres,* 411 F.2d 1081, 1084 (6th Cir. 1969). The potential value of land if subdivided could well be considered by a willing buyer and a willing seller where subdivision is a reasonable possibility and the costs of subdivision are not speculative or uncertain. *See id.* at 1086–87.

■ Even under our more generous standard of admissibility, however, it is apparent that the lot method appraisal offered in this case should have been stricken. The defense appraiser offered *no* evidence of projected subdivision costs. Although defendants assert before this Court that subdivision "would only require an outlay of a few hundred dollars in surveyor's fees," the record is devoid of any evidence to this effect. In the absence of credible cost evidence,[1] the trial court should have excluded the lot method valuation altogether. *See United States v. 478.34 Acres, supra,* 578

F.2d at 160; Federal Rule of Evidence 104(a) & (b).

■ There is another reason for excluding the lot method appraisal offered in this case. The defendants offered no evidence that the property was "needed or likely to be needed in the reasonably near future" for residential subdivision. *Olson v. United States,* 292 U.S. 246, 255, 54 S.Ct. 704, 708, 78 L.Ed. 1236 (1934). Although there was testimony that a few new homes had been built in the area around the time of condemnation, there was no evidence "of any current demand or potential for subdivisions in the neighborhood," or evidence that defendants "had a plan to subdivide" the property. *United States v. 478.34 Acres, supra,* 578 F.2d at 159. *See United States v. Easement & Right of Way 100 Feet Wide,* 447 F.2d 1317, 1319 (6th Cir. 1971). Valuation testimony based on a hypothesized subdivision should not be admitted where dependent "upon events or combinations of occurrences which, while within the realm of possibility, are not fairly shown to be reasonably probable." *Olson, supra,* 292 U.S. at 257, 54 S.Ct. at 709. *See United States v. 478.34 Acres, supra,* 578 F.2d at 160; *United States v. 2,635.04 Acres,* 336 F.2d 646, 648–49 (6th Cir. 1969).

We conclude, then, that the District Court erred in denying the Government's motion to strike the lot method appraisal testimony offered by the defense, and in failing to instruct the jury to disregard that testimony. Moreover, we cannot say that the error was harmless. The Government's appraiser estimated that the property condemned had a fair market value of $37,848 at the time of the taking. In contrast, the defense appraiser testified that, in light of the lost potential for subdivision, the taking had "cost" the defendants $181,387.08.[2] As

---

1. Of course, this foundational requirement could be met by introduction of credible evidence that subdivision would involve little or no cost, as in the case of a very simple or limited development. *Cf. United States v. 1,291.83 Acres,* 411 F.2d 1081, 1086–87 (6th Cir. 1969).

2. On the basis of comparable sales, the defense appraiser estimated that the land remaining after condemnation had a fair market value of $63,612.92. He subtracted this from the $245,000 figure to reach a total of $181,387.08. Of that total, $52,040.56 constituted the estimated value of the 47.3096 acres actually taken and $129,346.52 constituted the estimated damage

these were the only valuations offered, it seems probable that the jury relied, at least in part, on the lot method appraisal in awarding $77,000 to the defendants.

The judgment of the District Court is reversed and the case remanded for a new trial.

suffered by defendants in consequence of lost subdivision potential.