**BURLINGTON NORTHERN RAILROAD COMPANY,**
Petitioner,

v.

**Sidney L. HOOD, Respondent.**

**No. 89SC394.**

Supreme Court of Colorado,
En Banc.

Dec. 10, 1990.

Davis, Graham & Stubbs, Andrew M. Low, Judith A. Keene, James E. Puga, Michael J. Gallagher, Denver, for petitioner.

Irvin M. Kent, Aurora, Yaeger & Yaeger, P.A., Don C. Aldrich, Ronald J. Barczak, Minneapolis, Minn., for respondent.

Justice QUINN delivered the Opinion of the Court.

The question in this case is whether the trial court, during a jury trial on a personal injury claim brought under the Federal Employer's Liability Act, 45 U.S.C. §§ 51–60 (1989), erred in prohibiting the defendant from questioning the plaintiff and the plaintiff's wife about a purported conversation in which the plaintiff allegedly admitted to his wife, who repeated the conversation to several other persons, that he had staged a work-related accident and had feigned the injuries for which he sought damages against the defendant-employer. The trial court ruled that such evidence was inadmissible because it might encroach upon the statutory marital privilege for communications between husband and wife, § 13–90–107(1)(a)(I), 6A C.R.S. (Supp. 1990), also because any testimony about the conversation ostensibly would be lacking in personal knowledge and credibility in light of the wife's deposition testimony that the statement attributed to her husband may have been a dream, and, finally, because any trial testimony by the wife about

the conversation would constitute inadmissible hearsay. The jury returned a verdict for the plaintiff, and the court of appeals affirmed the judgment in an unpublished opinion. *Hood v. Burlington Northern Co.*, No. 86CA1799 (April 27, 1989). In affirming the judgment, the court of appeals did not consider the issue of marital privilege, but upheld the trial court's rulings on other grounds. It concluded that any cross-examination of the wife about her reporting the conversation to others would have been beyond the scope of her direct examination and inadmissible hearsay, that it would have been improper for the defendant to have elicited testimony from other witnesses about the wife's statement because of its hearsay nature, and that the defendant failed to preserve for appellate review its right to cross-examine the plaintiff about his alleged admission to his wife. We granted the defendant's petition for certiorari to consider whether the court of appeals properly resolved these evidentiary issues. We now reverse the judgment and remand the case for a new trial.

## I.

The issues in this case arise out of a negligence claim filed by Sidney L. Hood for injuries allegedly sustained while working as a locomotive electrician for Burlington Northern Railroad Company on December 28, 1983, at a railroad repair facility in Alliance, Nebraska. At the time of the accident, Hood was working in a diesel pit, which is a recessed service bay spanned by overhead tracks on which the locomotive engine is placed to facilitate repair. Hood fell from a ladder while working on an engine and struck his head on the floor. Shortly before the accident, which occurred at approximately 10:00 p.m., some lights in the service bay area unexpectedly went out. Several minutes later, after the lights came on, Hood was found by a co-worker lying unconscious on the floor of the service bay with a gash on the right side of his head and his face swollen. A lighted flashlight and a stepladder were resting near him.

Hood was taken to a local hospital and remained there for several days under the care of his family physician. During the period of hospitalization, Hood claimed that he was suffering amnesia and that, although he could recall events after the accident and from his distant past, he had no memory of the period of eight to ten years immediately preceding the accident. He claimed that he could remember his wife only as a much younger person and his two teenage sons as very small boys.

On December 3, 1984, Hood filed his complaint in the Denver District Court, in which he alleged that his injuries were caused by Burlington's negligence in furnishing him a defective ladder, in failing to properly illuminate the work area, and in permitting oil and grease to accumulate at the site of the accident. Burlington, in its answer, asserted that the accident was caused by Hood's contributory negligence and that, although he was injured in the accident, Hood did not suffer the type of injuries alleged in his complaint. The case was set for a jury trial on May 19, 1986.

Prior to trial, Burlington took several depositions and uncovered evidence indicating that the accident might not have occurred as Hood alleged and that his injuries might not be as he claimed. On May 1, 1986, approximately three weeks prior to trial, Dorothy Lunbery, the sister-in-law of Hood's wife, testified during a deposition that Hood's wife, Bernice, told Lunbery about a conversation that she (Mrs. Hood) had with Hood after he left the hospital. The conversation occurred on an acre of land owned by Hood and his wife near their home in Nebraska and was referred to as the "acre-of-land" conversation. According to Lunbery, Mrs. Hood told her that during the conversation Hood admitted that he had planned the accident, that she should not worry about him, and that he would never say anything about it again. The pertinent parts of Lunbery's deposition testimony were as follows:

Well, she [Mrs. Hood] told me that when Sid [Hood] got out of the hospital, and I don't remember the date, but they went out to the acre of land. She said that Sid

got out of the car; the vehicle, and Sid walked from the vehicle for a little ways and stood up straight and he said his name, his birthdate, other dates, the kids' names, their birthdays, what her name was, their anniversary, and he said that it was a fraud and that he was going to take the railroad.

Q. When you say that it was "fraud," what are you referring to?

* * *

A. The accident; his accident.

Q. What else was said by Sid Hood to [Mrs. Hood]?

* * *

A. That this would be the first and last time that that would ever be spoken....

Q. When Sid [Hood] was reciting the information to [Mrs. Hood], do you recall any other items that were included in that recitation?

* * *

A. He told her not to worry at that time. That was the reason that he was telling her, so she wouldn't worry. [H]e said, "I'm telling you this so you won't worry."

Q. Did [Mrs. Hood] tell you what her reaction was to that conversation?

A. She was shocked; very shocked.

Q. Why?

A. Because, she thought Sid was really hurt.

According to Lunbery, Mrs. Hood told her that her husband, during the conversation, apologized for having caused the accident on her birthday, but added that "nobody was around and that's when it had to happen." Lunbery also testified in her deposition that Mrs. Hood told her that Hood's brother, Burdette, who also worked for Burlington at the Alliance repair facility, "was in on it" and knew that "the so-called accident was going to happen ... when the opportunity was right." During her deposition Lunbery also stated that Mrs. Hood discussed the "acre-of-land" conversation many times with her, and on other occasions discussed it with other relatives and friends. On one of these occa-

sions Mrs. Hood's brother asked her, "Is [Sid] really hurt?" Mrs. Hood, according to Lunbery, hesitated for a minute and then stated, "No, it was a fake" and "he [Hood] really wasn't hurt and that he was going to 'take the railroad.'"

After Lunbery's deposition, Burlington made arrangements to re-depose Mrs. Hood on May 3, 1986. In an earlier deposition, Mrs. Hood testified that she and her husband, subsequent to the accident, drove to the site where the "acre-of-land" conversation is alleged to have taken place. During the earlier deposition, however, she merely stated that Hood became upset and told her "to shut up and leave him alone." In her second deposition on May 3, 1986, Mrs. Hood admitted discussing the "acre-of-land" conversation with Lunbery. At one point, she stated that she described the "acre-of-land" conversation with Lunbery in the context of a dream, but later acknowledged that she could not recall whether she told Lunbery that the conversation was a dream. Mrs. Hood admitted in her deposition that she told at least five other persons about the "acre-of-land" conversation, but she could not remember telling any specific individual that the conversation might have been a dream. When asked if she had any reason to believe that Hood's injuries might be feigned, Mrs. Hood responded, "I have got as much reason to believe that it isn't as I do that it is." She also admitted that she became confused over whether the "acre-of-land" conversation was a dream only after Hood had made repeated threats to kill her following her statements to Lunbery and others about Hood's admission, and that she had just recently, in the course of a pending divorce action, obtained a restraining order against him in order to prevent further harassment.

Based on the deposition testimony of Lunbery and Mrs. Hood, Burlington requested the trial court to continue the trial date so that it could further investigate whether the accident and Hood's injuries were real or feigned.[1] The court on May

1. In support of its argument for a continuance, Burlington represented to the court that during

16, 1986, denied the motion. Hood then moved for the exclusion at trial of any reference to the "acre-of-land" conversation. It was Hood's contention that Mrs. Hood could not determine whether the conversation had actually taken place and that any testimony about it would be untrustworthy and inadmissible hearsay. Immediately prior to jury selection on the scheduled trial date, the trial court conducted an *in-limine* hearing on Hood's motion and orally ruled that Burlington would be prohibited at trial from making any reference to, or from eliciting any testimony about, the "acre-of-land" conversation. The court, so far as the record shows, appeared to base its ruling on the following three grounds: that any testimony from Mrs. Hood about the conversation might encroach upon the spousal privilege; that any such testimony apparently would be lacking in personal knowledge and credibility because Mrs. Hood was uncertain whether the conversation actually had occurred; and that such testimony would be inadmissible hearsay.[2]

During the lengthy jury trial, Hood presented several lay and expert witnesses on the issues of liability and damages. Both Hood and his wife testified about his debilitating amnesia and the devastating impact that this condition had upon his relationship with his family. Burlington's counsel called the trial court's attention to the fact that the court's pretrial prohibition against making any reference to the "acre-of-land" conversation had substantially lim-

ited the cross-examination of Hood and his wife, but the court adhered to the previous ruling. The jury, after deliberation, determined that Burlington was 85 percent negligent and that Hood was 15 percent negligent, and fixed the plaintiff's damages at 1.5 million dollars. The trial court reduced this amount to 1.275 million dollars in accordance with the percentage of Hood's negligence, and entered judgment against Burlington for that amount.

Burlington appealed to the court of appeals, which affirmed the judgment. Remarking that Mrs. Hood was called for the limited purpose of testifying about the effect of her husband's injuries on him, the court of appeals was of the view that Mrs. Hood's prior statement to Lunbery would not have been inconsistent with her direct testimony and "would have been hearsay at any rate." The court of appeals also held that, because Mrs. Hood was "the only person claimed to have heard the alleged admission . . ., the only admissible evidence that Hood made the statement would have been the testimony of Hood's wife" and that, consequently, Lunbery could not "properly testify concerning the alleged admission." Finally, the court concluded that Burlington failed to properly preserve for appellate review its right to cross-examine Hood about his alleged admission to his wife. We thereafter granted Burlington's petition for certiorari to consider whether the court of appeals correctly held that Burlington was properly prohibited from questioning Hood or his wife or other wit-

the preceding week, Jerry Lunbery, the brother of Mrs. Hood, approached Burlington's agents and requested a reward in exchange for information to the effect that Hood had staged the accident and fabricated his amnesia. Burlington also contended that its medical witnesses were of the view that the causal relationship between the accident and Hood's claim of prolonged retrograde amnesia was suspect and that further medical examinations of Hood were necessary.

2. The trial court initially ruled that any statement regarding the "acre-of-land" conversation would be hearsay, except with respect to Mrs. Hood's testimony, but stated that "there is a further limitation on even asking that question on Mrs. Hood, and that is the relationship between husband and wife." The court later ruled

that Mrs. Hood's testimony about the conversation would be inadmissible because it lacked credibility, stating:

> The conversation that took place on the acre of land is not going to be gone into under any circumstances or conditions for the simple reason the only person who would be capable of testifying to anything that actually occurred with any degree of credibility is Mrs. Hood, and she has by her own statement said she doesn't know whether it took place or didn't take place. And I'm not going to permit you to go into that, either one of you, so don't fudge me on that.

It was after this statement that the court then went on to rule that any testimony about the "acre-of-land" conversation was hearsay and "does not stand the test of credibility."

nesses about Hood's alleged admission that he had staged the accident and had feigned his injuries.

## II.

Before addressing the hearsay aspect of the "acre-of-land" conversation between Hood and his wife, we believe it appropriate to consider that part of the trial court's ruling, not addressed by the court of appeals, suggesting that any testimony relating to that conversation might encroach upon the statutory spousal privilege. If the conversation between Hood and his wife was protected by the spousal privilege, then clearly Mrs. Hood could not be examined about the conversation without Hood's consent, with the result that any issue relating to the hearsay nature of Mrs. Hood's testimony would be moot. We are satisfied that the testimony which Burlington sought from Mrs. Hood about the conversation was not within the marital privilege.

Section 13–90–107(1)(a)(I), 6A C.R.S. (Supp.1990), states, in pertinent part, that "[a] husband shall not be examined for or against his wife without her consent, nor a wife for or against her husband without his consent" and that "during the marriage or afterward" neither spouse shall "be examined without the consent of the other as to any communications made by one to the other during the marriage." This statute creates two distinct privileges with respect to spousal testimony. The first privilege is sometimes referred to as the rule of spousal disqualification and prohibits one spouse from testifying against the other without the other's consent. *See In re Marriage of Bozarth,* 779 P.2d 1346, 1349 (Colo.1989); *People v. Lucero,* 747 P.2d 660, 666 (Colo. 1987). The second privilege prohibits the disclosure of a spousal communication made by one spouse to the other during the marriage. *Bozarth,* 779 P.2d at 1349; *Lucero,* 747 P.2d at 666. By calling his wife as a witness at trial and eliciting testimony from her regarding his amnesia, Hood waived the so-called rule of spousal disqualification embodied in the first privilege. It is the second privilege to which

the trial court apparently referred in stating that Mrs. Hood's testimony about the "acre-of-land" conversation might encroach upon the marital privilege.

In *Clark v. District Court,* 668 P.2d 3 (Colo.1983), we discussed the circumstances under which the physician-patient privilege and the psychologist-client privilege may be waived. We stated that a waiver, which is really a form of "consent" to disclosure, may be express or implied and "must be supported by evidence showing that the privilege holder, by words or conduct, has expressly or impliedly forsaken his claim of confidentiality with respect to the information in question." 668 P.2d at 8. This rule of waiver applies equally to the marital privilege. *See Cummings v. People,* 785 P.2d 920, 926 (Colo.1990). Thus, a failure to invoke the privilege in the face of adverse spousal testimony will constitute a waiver where such failure occurs under circumstances clearly indicating an abandonment of any claim of confidentiality. *Id.; see also United States v. Dien,* 609 F.2d 1038, 1043–44 (2nd Cir.1979) (failure to invoke marital privilege at suppression hearing constituted waiver); *United States v. Figueroa–Paz,* 468 F.2d 1055, 1057 (9th Cir.1972) (failure to make timely objection to testimony waived privilege).

In this case, there is a clear showing of waiver. Before Burlington's counsel re-deposed Mrs. Hood, Lunbery had already given deposition testimony in which she related in detail Mrs. Hood's statement to her about Hood's admission that the accident "was a fraud" and that he "was going to take the railroad." Hood's counsel, with full knowledge of Lunbery's prior testimony, attended the deposition of Mrs. Hood and, notwithstanding extensive questioning of her by Burlington's counsel about the "acre-of-land" conversation, at no time asserted any claim of privilege. The failure of Hood's counsel to claim the marital privilege during Mrs. Hood's deposition testimony clearly evinced an intent on Hood's part to forsake any claim of confidentiality with respect to his wife's testimony.

■ Moreover, although Hood's failure to assert the spousal privilege at the deposition was sufficient to establish a waiver, we need not rest our resolution of this issue solely on that basis. At trial, Hood's counsel called Mrs. Hood as a witness and elicited testimony from her about his condition shortly after the accident. Mrs. Hood testified that while in the hospital Hood "began to stutter," that he "could not keep his thoughts straight and organized," and that he jumped from one [subject] to the other." She further described in detail Hood's prolonged loss of memory and its detrimental effect on his relationship with his family. In light of the fact that Hood elicited trial testimony from his wife about the legitimacy and severity of his injuries, and did so with full awareness that his wife had previously told Lunbery and others that Hood admitted to her that the accident "was a fraud," we are satisfied that Hood must be deemed to have waived any claim of marital privilege concerning the "acre-of-land" conversation with his wife. To sanction the invocation of the marital privilege under these circumstances would permit Hood to elicit testimony from his wife in support of his claim against Burlington, while simultaneously prohibiting Burlington from demonstrating that Mrs. Hood's testimony was manifestly contrary to her husband's admission about the nature of his claim. This we decline to do. We thus conclude that any attempt by Burlington to cross-examine Mrs. Hood about the "acre-of-land" conversation would not have encroached on the marital privilege.

### III.

We turn to whether Burlington should have been permitted to cross-examine Mrs. Hood about the "acre-of-land" conversation with her husband. The court of appeals concluded that Mrs. Hood's statement to Lunbery about her husband's admission, in addition to not being inconsistent with Mrs. Hood's direct examination and thus constituting impermissible cross-examination, "would have been hearsay at any rate." We conclude that the court of appeals erred in its resolution of this evidentiary question.

### A.

■ Because the hearsay issue pervades most of the evidentiary aspects of this case, we first address the hearsay question. Hearsay is "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." CRE 801(c). Expressly excluded from the category of hearsay is an admission by a party opponent. CRE 801(d)(2)(A), which is identical to its federal counterpart, states that a statement is not hearsay if "[t]he statement is offered against a party" and is "his own statement in either his individual or a representative capacity." The rationale for excluding this type of evidence from the category of hearsay has been simply stated as follows:

> The admissibility of an admission made by the party himself rests not upon any notion that the circumstances in which it was made furnish the trier means of evaluating it fairly, but upon the adversary theory of litigation. A party can hardly object that he had no opportunity to cross-examine himself or that he is unworthy of credence save when speaking under sanction of an oath. His adversary may use against him anything which he has said or done. Originally he had no chance to make an explanation, but since about the middle of the 1800's, he has been competent as a witness and can furnish the trier with all pertinent information within his knowledge.

E. Morgan, *Basic Problems of Evidence* 266 (4th ed. 1963); *see also* C. McCormick, *Evidence* § 262 at 774–75 (E. Cleary 3rd ed. 1984). A party's admission has special evidentiary value when offered against the party making the admission because that party "is discredited (like a witness impeached by contradictory statements) by his statements inconsistent with his present claim asserted in his pleadings and in the testimony on which he relies." *Id.* at 775 (citing 4 J. Wigmore, *Evidence* § 1048 (Chadbourn rev. 1972)). The effect of removing an admission by a party-opponent

from the category of hearsay is to eliminate the personal knowledge requirement applicable to a non-party witness. It may reasonably be presumed under such circumstances that the party-opponent has made an adequate investigation prior to making the admission. McCormick, *Evidence* at 778. In similar fashion, the restrictions applicable to opinion evidence, which are designed to elicit more concrete and informative answers, *see* CRE 701 and 704, are not applicable to an admission by a party-opponent, since such admissions "are not made under circumstances in which alternative forms of expressions may be secured." M. Graham, *Handbook of Federal Evidence* § 801.15 at 758 (2nd ed. 1986); *see Holman v. Boston Land and Security Co.*, 20 Colo. 7, 36 P. 797 (1894).

■ In the instant case, the statement allegedly made by Hood to his wife clearly qualified as an admission and was not subject to the hearsay rule of exclusion. Not being hearsay, Mrs. Hood's testimony regarding the admission attributed to Hood would be no different from Mrs. Hood's testimony regarding an act performed by Hood and witnessed by her.

### B.

■ Although any testimony by Mrs. Hood recounting Hood's alleged admission to her would not constitute hearsay, such testimony nonetheless must satisfy other standards of admissibility. One such standard is relevancy. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401. Logically relevant evidence may be excluded under CRE 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, or by considerations of unnecessary delay or needless preparation of cumulative evidence. *See People v. Carlson*, 712 P.2d 1018 (Colo. 1986).

■ There is no question here regarding the relevancy of Hood's alleged admission to the issues of Burlington's liability and Hood's injuries and damages. Nor is there any suggestion in either the trial court's ruling or in the court of appeals' opinion that the probative value of the evidence was substantially outweighed by any of the countervailing considerations listed in CRE 403. Simply stated, if the "acre-of-land" conversation actually took place and was not the product of Mrs. Hood's dream, the trier of fact might well find that the accident was deliberately staged by Hood and that his injuries were feigned. The trial court, however, prohibited Burlington from examining Mrs. Hood about the conversation and did so ostensibly on the basis that her claimed uncertainty about the occurrence of the conversation rendered her testimony on that matter deficient in personal knowledge and credibility. In so ruling, the trial court applied an erroneously restrictive standard in determining whether the personal-knowledge requirement had been satisfied and, in addition, infringed on the jury's role in resolving issues of credibility and weight. What the trial court, and the court of appeals as well, should have relied upon in resolving Burlington's proposed cross-examination of Mrs. Hood about the "acre-of-land" conversation was the evidentiary rule of CRE 104(b) relating to the conditional admissibility of otherwise relevant evidence.

### C.

■ CRE 104(a) provides that preliminary questions of fact as to conditions precedent to admissibility—such as, for example, the competency of a witness to testify,[3] the existence of a privilege, the applica-

---

3. Section 13–90–106(1)(a), 6A C.R.S. (1987), states that persons of unsound mind at the time of their production for examination shall not be witnesses. Our case law is clear that the competency of a witness to testify is a matter for the court to determine, *e.g., People v. District Court,* 647 P.2d 1206, 1211–12 (Colo.1982); *Howard v. Hester,* 139 Colo. 255, 260, 338 P.2d 106, 108 (1959), while questions relating to the credibility of a witness and the weight to be accorded the testimony of a witness are matters to be resolved solely by the jury, *e.g., Morrison v.*

bility of hearsay exceptions, or the voluntariness of a confession—are to be determined by the court, subject, however, to the provisions of subdivision (b) relating to conditional relevancy. CRE 104(b) states as follows:

> When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.

Questions of conditional relevancy depend solely upon the existence of a particular preliminary fact rather than upon the application of the protective policies of exclusionary rules. *See* 1 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 104[02], at 104–20 (1990); E. Morgan, *Basic Problems of Evidence* 45–46 (4th ed. 1963). Preliminary questions of conditional relevancy under CRE 104(b) are "questions of probative force rather than evidentiary policy." *United States v. James*, 590 F.2d 575, 579 (5th Cir.) *cert. denied* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979). The resolution of such questions, as noted by the advisory committee's note to Fed.R. of Evid. 104(b), is within the competence of ordinary jurors:

> If preliminary questions of conditional relevancy were determined solely by the judge, as provided by subdivision (a), the functioning of the jury as a trier of fact would be greatly restricted and in some cases virtually destroyed. These are appropriate questions for juries. Accepted treatment, as provided in the rule, is consistent with that given fact questions generally. The judge makes a preliminary determination whether the foundation evidence is sufficient to support a finding of fulfillment of the condition. If so, the item is admitted. If after all the evidence on the issue is in, pro and con, the jury could reasonably conclude that fulfillment of the condition is not established, the issue is for them. If the evidence is not such as to allow a finding, the judge withdraws the matter from their consideration.

Fed.R.Evid. 104(b) advisory committee's note, 56 F.R.D. at 198–99 (1972).

■■■■ In determining the admissibility of conditionally relevant evidence, a trial court is not to evaluate and weigh the credibility of the proffered evidence but rather is to examine all the evidence from the standpoint of answering whether the jury could reasonably find by a preponderance of the evidence that the conditional fact has been established. *See, e.g., Huddleston v. United States*, 485 U.S. 681, 690, 108 S.Ct. 1496, 1501, 99 L.Ed.2d 771 (1988); *United States v. 478.34 Acres of Land, Tract No. 400*, 578 F.2d 156, 159–160 (6th Cir.1978); 1 *Weinstein's Evidence* ¶ 104[09], at 104–78 to 79. A fact is proved by a preponderance of the evidence if the jury, upon consideration of all the evidence, finds "the existence of the contested fact is more probable than its nonexistence." *Page v. Clark*, 197 Colo. 306, 318, 592 P.2d 792, 800 (1979) (quoting McCormick, *Evidence* § 339 (2nd ed. 1972)); *see* CJI–Civ. 3rd ed. 3.1. Only if the proffered evidence, considered in its total context, is manifestly insufficient to sustain a reasonable finding by the jury of the conditional fact should the trial court rule the evidence inadmissible. *See United States v. Westmoreland*, 841 F.2d 572, 579 (5th Cir.) *cert. denied* 488 U.S. 820, 109 S.Ct. 62, 102 L.Ed.2d 39 (1988); *United States v. Beechum*, 582 F.2d 898, 913 (5th Cir.1978) *cert. denied* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979).

Before a witness testifies to a matter there must be evidence "sufficient to support a finding that [the witness] has personal knowledge of the matter." CRE 602. The personal-knowledge requirement of Rule 602 is "a specialized application of the provisions of Rule 104(b) on conditional relevancy." Fed.R.Evid. 602 advisory committee's note, 56 F.R.D. at 263. Thus, unless the evidence is manifestly insufficient to support such a finding, the question of

---

*Bradley*, 655 P.2d 385, 388 (Colo.1982); *Kiefer Concrete, Inc. v. Hoffman*, 193 Colo. 15, 20, 562 P.2d 745, 748 (1977). In the instant case, the trial court did not question Mrs. Hood's competency as a witness, nor was any issue raised regarding her competency to testify.

whether a witness possesses the requisite personal knowledge to satisfy the requirements of Rule 602 is for the jury to resolve pursuant to Rule 104(b). *M.B.A.F.B. Federal Credit Union v. Cumis Ins. Soc., Inc.*, 681 F.2d 930, 932–33 (4th Cir.1982); *United States v. Owens*, 699 F.Supp. 815, 817–18 (C.D.Cal.1988); Graham, *Handbook of Federal Evidence* § 602.1; 3 D. Louisell & C. Mueller, *Federal Evidence* § 261, at 45 (1979); 3 *Weinstein's Evidence* ¶ 602[02].

 The threshold for satisfying the personal-knowledge requirement is not very high and may be inferable from sources other than the witness, CRE 602, and from the total circumstances surrounding the matter that is the subject of the witness's testimony. Graham, *Federal Evidence* § 602.1; 1 Louisell & Mueller, *Federal Evidence* § 32, at 228–29 (1977).[4] Thus, as long as there is evidence before the trial court that the jury, as the trier of fact, could reasonably find that the witness has personal knowledge of the event to which the witness is about to testify, the witness should be permitted to testify, and the questions of credibility and weight should be left for the jury to resolve. *M.B. A.F.B. Federal Credit Union*, 681 F.2d at 932–33; *Owens*, 699 F.Supp. at 817–18. 1 Louisell & Mueller, *Federal Evidence* § 32; 3 *Weinstein's Evidence* ¶ 602[2]. In admitting evidence under CRE 104(b), a trial court should inform the jury by appropriate instruction to disregard the witness's testimony if it does not find by a preponderance of the evidence that the witness had personal knowledge of the matter about which the witness testified. *Huddleston*, 485 U.S. at 690, 108 S.Ct. at 1501. 1 Louisell & Mueller, *Federal Evidence* § 32, at 231.

 Here, the deposition testimony presented to the trial court at the *in-limine* hearing was such as to permit a reasonable finding by the jury that Mrs. Hood satisfied the personal knowledge re-

quirement of CRE 602 with respect to the "acre-of-land" conversation. Mrs. Hood, during her first deposition, acknowledged that she was actually present on the "acre-of-land" with her husband. During her second deposition, she admitted that she recounted to her sister-in-law, Dorothy Lunbery, as well as to other persons, Hood's statement to her that the accident was staged and his injuries were feigned. Although at one point in her second deposition Mrs. Hood stated that she had described the "acre-of-land" conversation to Lunbery in the context of a dream, at another point she testified that she was unsure whether it was a dream, and at yet another point she could not recall telling Lunbery or any other person that the conversation might only have been a dream. Moreover, Lunbery testified in her deposition that Mrs. Hood described the "acre-of-land" conversation as having actually occurred and not as the product of a dream. Finally, Mrs. Hood, again in her second deposition, admitted that she first became confused over whether the conversation actually took place after her husband had made repeated threats to kill her due to her telling others about the conversation. The trial court ignored this evidence in prohibiting Burlington from cross-examining Mrs. Hood about the "acre-of-land" conversation. Instead of analyzing the issue of Mrs. Hood's personal knowledge under CRE 104(b), the trial court improperly resolved that issue by crediting and weighing a very isolated part of her deposition testimony to the exclusion of other parts and also to the exclusion of the deposition testimony of Lunbery.

Because the probative force of the evidence relating to the "acre-of-land" conversation is dependent on the condition that the conversation actually took place, the very same deposition testimony which was sufficient to support a reasonable finding by the jury that Mrs. Hood's testimony

---

4. If a witness is to testify to an out-of-court statement, whether the statement be admissible for a non-hearsay purpose, or as "not hearsay" under Rule 801(d), or under any of the many exceptions to the hearsay rule, the personal knowledge requirement is satisfied if the witness has firsthand knowledge concerning the making or preparation of the statement itself, regardless of the extent of his knowledge concerning the facts or events reported in the statement. 3 D. Louisell & C. Mueller, *Federal Evidence* § 260, at 40 (1979).

about the "acre-of-land" conversation with her husband satisfied the personal knowledge requirement of CRE 602 also was adequate to support a reasonable finding by the jury that, for purposes of satisfying the conditional relevancy requirement of CRE 104(b), the "acre-of-land" conversation between Hood and his wife, in which Hood admitted that his accident was staged and his injuries were feigned, actually occurred. *See Huddleston*, 485 U.S. at 690, 108 S.Ct. at 1501; *478.34 Acres of Land*, 578 F.2d at 159–160; *People v. Lyle*, 200 Colo. 236, 239, 613 P.2d 896, 898 (1980). Burlington, therefore, should have been permitted to cross-examine Mrs. Hood about her husband's alleged admission to her.

### D.

The court of appeals was of the view that, because Mrs. Hood testified only on the issue of the effect of the injuries on her husband and "did not testify concerning the admission allegedly made to her by Hood, nor as to any statements about the accident and its causes," the "acre-of-land" conversation between Hood and his wife was not inconsistent with Mrs. Hood's direct testimony and thus was not within the scope of proper cross-examination by Burlington. In so holding, the court of appeals misconstrued the permissible scope of cross-examination.

■ The scope of cross-examination encompasses the subject matter of the direct examination and "matters affecting the credibility of the witness." CRE 611(b). The court of appeals' analysis fails to account for the fact that the "acre-of-land" conversation related directly to the subject matter of Mrs. Hood's direct testimony concerning the injuries sustained by her husband. The conversation between Hood and his wife, therefore, was a proper subject for Burlington to pursue in cross-examining Mrs. Hood. *See e.g., City of Pueblo v. Ratliff*, 131 Colo. 381, 386–87, 281 P.2d

1021, 1023–24 (1955); *Lothrop v. Roberts*, 16 Colo. 250, 252–54, 27 P. 698, 699–700 (1891).

■ If Burlington had been permitted to cross-examine Mrs. Hood about her husband's alleged admission and Mrs. Hood had admitted that the conversation actually took place, Hood's admission, as previously discussed, would have constituted substantive evidence that he had staged the accident and that he had feigned his injuries. If, however, Mrs. Hood on cross-examination had denied the conversation or was unable to recall whether it actually occurred, then Burlington should have been permitted to cross-examine her about her prior statements to Lunbery and others in which she described the conversation as an actual occurrence and at no time stated that it was a dream. *See Williams v. District Court*, 700 P.2d 549, 557 (Colo. 1985) (omission of significant detail "which it would have been natural to mention in the prior statement" establishes inconsistency); McCormick, *Evidence* § 34 at 74–75 (same). In the event Mrs. Hood would have denied such prior statements or testified that she told Lunbery and others that the "acre-of-land" conversation was a dream, Burlington should have been permitted to prove, through the testimony of Lunbery and others, Mrs. Hood's prior inconsistent statements to those persons.

■ Mrs. Hood's prior inconsistent statements to Lunbery and others, if proven, would not have been hearsay. CRE 801(d)(1)(A) states that a prior statement of a witness is not hearsay if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and if the statement is inconsistent with the trial testimony of the declarant.[5] By excluding the prior inconsistent statement from the category of hearsay, a prior inconsistent statement conforming to CRE 801(d)(1)(A) is admissible as substantive evidence.[6]

5. CRE 801(d)(1)(A) differs from Fed.R.Evid. 801(d)(1)(A) in that the federal rule requires that the prior statement be given "under oath subject to the penalty of perjury at a trial, hearing or other proceeding, or in a deposition."

6. CRE 613(a) requires that in examining a witness concerning a prior inconsistent statement, "the examiner must call the attention of the witness to the particular time and occasion when, the place where, and the person to whom

## IV.

Our conclusion that Burlington should have been permitted to cross-examine Mrs. Hood about the "acre-of-land" conversation applies with even greater force to Burlington's request to cross-examine Hood about the conversation. In rejecting Burlington's claim on this aspect of the case, the court of appeals was of the view that Burlington failed to assert "through an appropriate offer of proof that it should have been able to question Hood himself concerning his alleged admission." The court of appeals resolution of this aspect of the case is unsupported by the record.

CRE 103(a)(2) provides that error may not be predicated upon a ruling excluding evidence unless a substantial right of the party is thereby affected and, "[i]n case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." Prior to trial, Burlington made the trial court aware of its desire to cross-examine both Hood and his wife about the "acre-of-land" conversation. The trial court unequivocally ruled that Burlington would be precluded from making any reference to the "acre-of-land" conversation during the trial. After Hood's trial testimony, and also at the conclusion of Mrs. Hood's trial testimony, Burlington again made known to the trial court its desire to cross-examine both Hood and his wife about Hood's alleged admission. The trial court, however, adhered to its previous ruling and prohibited such interrogation. The record clearly shows that Burlington, which was adversely affected by the trial court's ruling, adequately made the trial court aware of the substance of the evidence which it desired to present. The court of appeals erred in reaching a contrary conclusion.

The judgment is accordingly reversed and the case is remanded to the court of appeals with directions to return the case to the trial court for a new trial.

[the witness] made the statement." If the witness admits making the prior statement, additional extrinsic evidence that the prior statement was made is inadmissible. CRE 613(a). The witness's denial or failure to remember the prior statement is a prerequisite for the introduction of extrinsic evidence to prove that the prior statement was made. *Id.*

Under some circumstances, an inconsistent statement may be admissible only for impeachment purposes, such as an inconsistent statement offered to attack the credibility of the declarant of a hearsay statement or an admission by a party-opponent. Pursuant to CRE 806, evidence of a statement or conduct by the declarant at any time, whether prior or subsequent to the hearsay statement and inconsistent therewith, "is not subject to any requirement that [the declarant] may have been afforded an opportunity to deny or explain." Of course, the party offering a prior inconsistent statement, even if technically admissible as substantive evidence, may request its admission for the more limited purpose of impeachment only, and the court may so restrict the evidence and instruct the jury accordingly. CRE 105.