[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal by the plaintiff from the assessment of damages in the amount of $157,000 paid by the defendant for the total taking by eminent domain on February 7, 1992, of his property situated on the westerly side of and known as No. 43 Forest Street, in the Town of Bristol, for the lay-out, alteration, extension, widening, change of grade and improvement of the highway commonly known as Conn. Route 72.
The premises taken are more particularly bounded and described as follows: Easterly by Forest Street, 162.5 feet; Southerly by land n/o/f/o Rudolf J. Heyne et al., 269 feet, more or less; Westerly by land n/o/f/o Renaud A. Lessard et al., 170 feet, more or less; and Northerly by lands n/o/f/o Anthony J. Dubinski et al., Mary E. Mendellax and John E. Girard et al., by each in part, in all, 259 feet, more or less.
Said Parcel contains 1.01 acres, more or less, together with all buildings and appurtenances, all of which more particularly appears on a map entitled: "Town of Bristol, Map Showing Land Acquired From John J. Sindak by The State of Connecticut, Conn. Rte. 72, Scale 1" = 40', September 1990, Robert W. Gubala, Transportation Chief Engineer — Bureau of Highways."
The subject property consists of a rectangular shaped lot having a frontage of 162.5 feet and an average depth of 264 feet. The topography is mostly level. The land is well landscaped with manicured shrubbery and stately trees, creating a suburban picture.
The property taken is improved with a two-story single-family dwelling located at approximately the center of the street frontage and having about 1496 square feet of living area. The house is 68 years old and contains six rooms, including three bedrooms and one bathroom. The interior has not been modernized and contains only 30 amperes electrical capacity. It is serviced by a septic sewage waste system, the nearest sewer main being 140 feet south CT Page 15 of the southeasterly corner of the property. Homes in the immediate area appear to be similar in size, age and construction, but on smaller lots. This area of town was developed when smaller homes on smaller lots, 50 feet wide, were the norm. The evidence shows that the subject land is a conglomerate of smaller lots and portions of an abandoned "paper street."
The subject property is located in a Residential R-10 zone, a single-family dwelling zone. Relevant dimensional requirements are as follows: minimum lot area — 10,000 square feet; and minimum lot frontage — 85 feet. The footprint of the dwelling is relatively small in comparison to the size of the lot, leaving a great amount of open area on the two sides and rear of the house. A paved driveway on the north side leads to a garage and shed in the rear yard.
The plaintiff's interruption and delay of this eminent domain action before its commencement, and his activities during that period of time, were unique. The taking map referred to hereinbefore was prepared in September 1990. It was based on a property survey made earlier. Thereafter the plaintiff requested that the defendant advance the taking. This was agreed to, and about July 1991 the defendant offered $157,000 as compensation for damages resulting from the condemnation. The following month the plaintiff asked for a two-month delay in the acquisition, having then the unexpressed intention of subdividing the property in the interim to enhance its value. In November he obtained a further continuance while he pursued the subdivision and resubdivision of the subject property into three parcels, the front and center parcel containing the dwelling, but without the garage and shed located on the rear two parcels.
To maximize the subdivision, the plaintiff created a gerrymander of three lots. On or about September 24, 1991, the property was legally subdivided as of right into Parcels A and B. Parcel B was created out of the northerly half of the rear yard from the westerly lot line to a point about 25 feet from the house; then it turned northeasterly 63.62 feet to a point 25 feet from the northerly lot line; from there the new lot line ran parallel to and 25 feet south of the original lot line for a "25' R.O.W." to the street line, containing an area of 15,005 square feet in the rear land and an area of 1849 square feet in the right of way, for a total area of 16,854 square feet or 0.387 of an acre. It became a "flag lot," a rear lot with a long narrow extension or right of way for access to a street. The remainder of the subject property containing the dwelling was designated Parcel A.
The next step in cutting the subject property into a jigsaw puzzle was to resubdivide Parcel A into Parcel A and Parcel A-1. This subdivision has submitted to the planning commission about November 1, 1991. Parcel A-1 in CT Page 16 its rear portion was a mirror image of Parcel B adjoining it on the north. This lot consisted of a "25' R.O.W." on the southerly 25 feet of the property from the street frontage to the rear portion, which then fanned out and extended in length to the westerly lot line and in width from the southerly lot line to the southerly line of Parcel B. As so drawn this lot contained an area of 15,384 square feet in the rear land and an area of 1250 square feet in the right of was, for a total area of 16,634 square feet or 0.382 of an acre. The existing garage and shed were to be removed from the two rear parcels. Neither Parcel A-1 nor Parcel B as proposed complied with the R-10 zone requirement for a minimum lot frontage of 85 feet.
The remainder of Parcel A in the original subdivision containing the dwelling No. 43 Forest Street was redesignated Parcel A. It was now hexagonal in shape with the remaining street frontage of 112.49 feet. The area of the reduced house lot was now 10,224 square feet or 0.235 of an acre. There was no longer a garage or driveway on the lot. Minor revisions were made to this resubdivision plan on or about January 7, 1992. These resulted in an extension of the "25 R.O.W." on Parcel A-1 from 50 to 60 feet; a decrease in the area of Parcel A to 10,093 square feet; and an increase in the total area of Parcel A-1 to 16,765 square feet.
On January 22, 1992, this resubdivision was approved with conditions, the most important of which was that sanitary sewer laterals be run to the street line for those properties that are passed in bringing the sanitary sewer line up from Gina Street at no cost to those adjoining owners. By its certified letter of February 10, 1992, the City Planning Commission notified the plaintiff of this subdivision approval. In the meantime, on February 7, 1992, the defendant completed its taking of the subject property. There is no evidence that the plaintiff ever perfected his subdivision by recording the approved subdivision plan on the land records. See General Statutes }8-25(a).
The plaintiff's appraiser predicated his valuation of the subject property on its subdivision into three lots. In his opinion, the highest and best use of Parcel A, No. 43 Forest Street, was for its continued residential use, and of Parcels A-1 and B was for the development of single-family residence on each. Using the direct sales comparison approach in each case, he initially estimated the fair market value of these proposed individual divisions of the subject property as follows: Parcel A (43 Forest Street) — $106,000; Parcel A-1 — $57,000; and Parcel B — $59,000, for a total value of $222,000, less the cost of providing sewers and water. On September 4, 1992, after conferring with a local contractor, he estimated these lot improvements, including the demolition of the garage and shed, to cost $16,000. By his calculation, therefore, the damages to the plaintiff resulting from the taking were $206,000. The defendant rested his case CT Page 17 without the presentation of any evidence.
Manifestly the plaintiff sought the approval of a subdivision only after the defendant's initial offer of damages. The effect of this "paper subdivision" made for the sole purpose of damage enhancement is questionable. A single-family home in a park-line setting on a one acre lot was stripped of its aesthetic charm by this arbitrary division into three erratic pieces in the hopeful, but veiled, attempt to enhance its value. The court finds that the resulting three parcels are unique, uncommon, unconforming and unrealistic lots for residential purposes, grossly unlike those of a subdivision development. At the time of taking, the subject property was not adaptable to subdivision development. See Robinson v. Westport, 222 Conn. 402, 406 (1992).
In determining the highest and best use of property in an appeal from the assessment of damages in eminent domain proceedings, the court must "consider whether there was a reasonable probability that in the reasonably near future the subject property will be subdivided." Robinson v. Westport, id., quoting Minicucci v. Commissioner of Transportation, 211 Conn. 382, 385
(1989). The highest and best use of the subject property at taking was its continuance as a single parcel in the form, shape and area existing before the inappropriate subdivision. Creating more parcels of land out of the whole piece is not always better than single unit itself. Before the doings of the plaintiff, one would never have anticipated that any subdivision of the plaintiff's property has probable. Probable the plaintiff has shown it to be, but only in a form neither reasonable nor practical nor adaptable nor effective for the purpose it sought to achieve.
"`[A] lot method appraisal can be admitted in appropriate cases if the proponent offers credible evidence of the costs of subdivision — e.g., the expense of clearing and improving the land, surveying and dividing it into lots, advertising and selling, holding it, and paying taxes and interest until all lots are sold. . . . The potential value of land if subdivided could well be considered by a willing buyer and a willing seller where subdivision is a reasonable possibility and the costs of subdivision are not speculative or uncertain.' United States v. 47.3096 Acres. Etc., In Oxford Township, 583 F.2d 270, 271-72 (6th Cir. 1978). Robinson v. Westport, supra 408.
The evidence relating to the subdivision and resubdivision of the subject property into three separate parcels for profitable sale was too speculative and uncertain to support its credibility. There was no reliable evidence of the cost of development. The appraiser's statement that "[i]n conferring with a local contractor, an estimate of $16,000 for providing the public utilities and the demolition of the outbuildings is indicated" is not CT Page 18 probative. No specifications or details of estimate were given. Even if it was otherwise admissible, its foundation was questionable since he estimated in his written report in evidence, contrary to his more accurate testimony at trial, that the sewer was "currently 100' +/- away," a gross understatement for a reliable estimate of cost.
No evidence was proffered supporting the marketability of the hexagonal shaped Parcel A with dwelling on a minimally-sized lot, or of the two rear "flag lots." In all three market valuations, the plaintiff's appraiser made this qualifying statement under "Comments and Conditions": "Implicit in the definition of the M.V. [Market Value] is that aggressive marketing be employed that an adequate amount of time is allowed." Additionally, in his valuation of the two rear "flag lots" he utilized as comparable sales three house lots fronting on a street.
The plaintiff's testimony that he intended to sell the lots without a broker was a hollow statement. There was no intent to subdivided the property before his apparent dissatisfaction with the defendant's damage award. The court finally notes that the legal or conforming compliance of Parcels A-1 and B with the R-10 zone requirement for a minimum lot street frontage of 85 feet was not addressed in the plaintiff's presentation.
Under our law, a state referee sitting as a court on appeals in condemnation cases is more than just a trier of fact or an arbitrator of differing opinions of witnesses or claims of parties. He is charged by the General Statutes and the decisions of our courts with the duty of making an independent determination of value and fair compensation in the light of all the circumstances, a review of the evidence, his general knowledge, and his viewing of the premises. Minicucci v. Commissioner of Transportation, supra 388; D'Addario v. Commissioner of Transportation, 180 Conn. 355, 366
(1980). In the performance of this duty, based upon all the circumstances, consideration of the evidence, general knowledge of the elements constituting value, and a viewing of the property and surrounding area, I find the value of the subject property to be as follows: depreciated value of dwelling No. 43 Forest Street — $49,000; site improvements (garage, shed, paved driveway, trees, landscaping and lawn) — $12,500; 1.01 acres lot — $120,000; total value — $181,500. Damages, therefore, are assessed at $181,500.
Judgment may enter for the plaintiff in the amount of $181,500, less $157,000 previously paid, or an excess of $24,500, with interest on such excess from the date of taking to the date of payment at the rate of 10% per annum, together with costs, and a reasonable appraisal fee of $1200.
William C. Bieluch State Trial Referee CT Page 19